FILED

2021 Nov-18  AM 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **VINCENT DAVIS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:20-cv-01406-CLM** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Vincent Davis seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Davis's application in an opinion written by an Administrative Law Judge ("ALJ"). Davis argues: (1) that the ALJ's residual functional capacity assessment was deficient, and (2) that the ALJ erred in relying on the vocational expert's testimony to determine that Davis can perform work that exists in significant numbers in the national economy.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of Davis's application for benefits.

I.      **Statement of the Case**

A.      **Davis's Disability, as told to the ALJ**

Davis was 50 years old at the time of the ALJ's decision. R. 47, 273. Davis received a GED in 1986. R. 308. And he has past work as a parking lot signaler, general production worker at a poultry plant, and machine cleaner. R. 95–96.

In his disability report, Davis alleged that he was disabled because of back problems, chronic pain, pancreatitis, spinal meningitis, compound fractural of the right leg, steel plate in the right heel, diverticulosis, and removal of gallbladder. R. 307. At the ALJ hearing, Davis testified that he cannot stand for more than 15 to 20 minutes at a time or do any heavy lifting. R. 77. He also stated that he went to the hospital three times between August and October 2017 for pancreatitis. R. 78. Davis then said that he takes Lyrica for nerve pain and is on high blood pressure medication. R. 79–80. Davis also stated that he suffers from panic attacks and his medicine affects his short-term memory and makes him confused. R. 80–81. Davis then reported that he can only walk 50 yards at a time and that he can't lift or carry anything heavier than a gallon of milk. R. 83. According to Davis, his pain is typically an 8/10 on the pain scale without medication and a 7/10 on the pain scale with medication. R. 84.

Davis can shower/bathe, take care of his personal hygiene, and get dressed. R. 86. Davis also helps with light chores around the house, including light laundry,

loading the dishwasher, and doing a few dishes by hand. *Id.* But Davis's son mows his yard. *Id.* Davis usually spends his day reading or watching TV. R. 87. And he sometimes goes with his wife to the grocery store to help her shop. *Id.*

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box,

there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Davis's residual functional capacity is the most important step here, as all of Davis's challenges flow from the ALJ's decision at this juncture.

### C.      Davis's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Davis applied for disability insurance benefits, a period of disability, and SSI in December 2017, claiming that he was unable to work because of various ailments, including back problems, chronic pain, pancreatitis, spinal meningitis, compound fractural of the right leg, steel plate in the right heal, diverticulosis, and removal of gallbladder. After receiving an initial denial in February 2018, Davis requested a hearing, which the ALJ conducted in September 2019. The ALJ ultimately issued an opinion denying Davis's claims in November 2019. R. 50–59.

At Step 1, the ALJ determined that Davis was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 52.

At Step 2, the ALJ determined that Davis suffered from the following severe impairments: history of pancreatitis and diverticulosis, status-post cervical fusion, and spine disorders. R. 52–54.

At Step 3, the ALJ found that none of Davis's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 54. Thus, the ALJ next had to determine Davis's residual functional capacity.

The ALJ determined that Davis had the residual functional capacity to perform light work with these added limitations:

- Davis can only occasionally climb ramps or stairs.

- Davis can never climb ladders, ropes, or scaffolds.

- Davis can frequently balance, and occasionally stoop, kneel, or crouch, but never crawl.

- Davis cannot overhead reach bilaterally.

- Davis must avoid frequent exposure to extreme cold, extreme heat, and vibrations.

- Davis must avoid all exposure to unprotected heights, unprotected moving mechanical parts, and dangerous machinery.

- Davis must alternate sitting and standing every 20–30 minutes throughout the workday to change position for a brief positional change of less than 5 minutes, but without leaving the workstation.

- Normal work breaks can accommodate Davis's time off-task.

R. 54–57.

At Step 4, the ALJ found that Davis couldn't perform his past relevant work. R. 57. At Step 5, the ALJ determined that Davis could perform other jobs, such as rental clerk, small product assembler, and electrical accessory assembler that exist in significant numbers in the national economy and thus Davis was not disabled under the Social Security Act. R. 57–58.

Davis requested an Appeals Council review of the ALJ's decision. R. 1–6. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Crawford*, 363 F.3d at 1158.

### III.   Legal Analysis

Davis makes two arguments for why the ALJ erred. First, Davis argues that the ALJ erred because the ALJ's residual functional capacity assessment violates the requirements of SSR 96-8(p), lacks the support of substantial evidence, and fails to point to a physical capacity evaluation by a treating or examining physician. Second, Davis asserts that the ALJ erred in relying on the vocational expert's testimony to determine that he can do work that exists in significant numbers in the national economy. The court will address each argument in turn.

### A.   Residual Functional Capacity Assessment

Davis's argument that the ALJ's residual functional capacity assessment was deficient has three parts.

1. <u>SSR 96-8p</u>: Davis first argues that the ALJ erred by not assessing his residual functional capacity on a function-by-function basis like the social security regulations require. SSR 96-8p requires a residual functional capacity assessment to "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184. Only after an ALJ conducts that analysis may the claimant's residual functional capacity "be expressed in terms of exertional levels of work." *See id.* At least two unpublished Eleventh Circuit opinions have stated that an ALJ meets this

requirement by discussing the relevant evidence in the record and citing a regulation that defines the exertional demands of the claimant's residual functional capacity. *See Casteel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007).

The ALJ's decision thoroughly discusses Davis's medical records, evidence of Davis's daily life activities, Davis's hearing testimony, and the state agency medical consultant's opinion on Davis's functional limitations. R. 54–56. Plus, the ALJ cited the regulations that define the exertional demands of light work. R. 54. So the ALJ satisfied the requirements of SSR 96-8p under Eleventh Circuit case law. *See Casteel*, 355 F. App'x at 263; *Freeman*, 220 F. App'x at 959–60.

2. <u>Substantial evidence</u>: Davis next argues that the ALJ's residual functional capacity assessment is conclusory and lacks the support of substantial evidence. But, as shown below, the ALJ's residual functional capacity assessment is not conclusory. Nor does the ALJ's finding that Davis could perform a range of light work lack the support of substantial evidence.

The SSA's regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567(b). Even so, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The ALJ supported

his finding that Davis could perform light work by pointing to Davis's objective medical records, Davis's reported daily activities, and the state agency medical consultant's opinion on Davis's functional limitations.

As the ALJ noted, imaging of Davis's abdomen revealed that he has mild peripancreatic edema suspicious for acute pancreatitis, wall thickening of the sigmoid colon and rectum most likely because of nondistension, and diffuse colitis. R. 459–60, 558. And imaging of Davis's spine in 2009 showed mild cervical spondylosis. R. 391. But while Davis's cervical spine had a reduced range of motion and tenderness, R. 628, 588, his other musculoskeletal findings were largely normal to mild. R. 448, 588, 635, 582. Plus, Davis's colonoscopy report states that he had mild diverticulosis "but was otherwise normal with no evidence of inflammation and no polyps detected." R. 636.

Several of Davis's self-reported daily activities also support the ALJ's residual functional capacity assessment and decision to discredit Davis's hearing testimony about the severity of his pain. For example, Davis testified that he can prepare simple meals, do light housework, and go grocery shopping. R. 86–87. Davis also traveled from Alabama to Niagara Falls and cleans up after his cats. R. 585.

The state agency medical consultant's opinion also supports the ALJ's residual functional capacity assessment. According to Dr. Amason, Davis can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.

R. 180. Dr. Amason then found that Davis could stand, walk, and sit for about 6 hours in an 8-hour workday. R. 180–81. He also found that Davis had several postural, manipulative, and environmental limitations. R. 181–82. As the ALJ noted, these findings suggest that Davis can essentially perform light work. And considering the factors of supportability and consistency that apply to claims for benefits filed after March 27, 2017, the ALJ found Dr. Amason's opinion persuasive for two reasons. First, Dr. Amason supported his opinions by pointing to a lack of treatment in the records. R. 56. Second, Dr. Amason's opinions matched the normal to mild musculoskeletal findings in the record. R. 56–57.

Davis makes no specific argument about why he alleges the ALJ erred in relying on his daily activities, the objective medical evidence, and Dr. Amason's opinion to find that he could perform a range of light work. Nor does he cite other evidence in the record that would suggest that no reasonable person could agree with the ALJ's residual functional capacity assessment. Having reviewed the medical and nonmedical evidence in the record, the court finds that the evidence the ALJ cited provides substantial evidence to support the ALJ's finding that Davis could perform light work with a few added limitations.

3. Physical capacities evaluation: Davis's third argument for why the ALJ erred in assessing his residual functional capacity is that the ALJ needed to rely on a physical capacities evaluation by either an examining or treating physician to make

this assessment. At the hearing level, the ALJ, not doctors, has the sole responsibility of assessing a claimant's residual functional capacity. 20 CFR §§ 404.1546(c), 416.946(c). And Davis does not specify any functional limitations that he has that the ALJ failed to consider. Nor does Davis point to any relevant objective medical evidence that the ALJ did not consider. So the court sees no error in the ALJ's residual functional capacity assessment.

### B.   Vocational Expert's Testimony

Davis next asserts that the ALJ erred in relying on the vocational expert's testimony to find that he was not disabled because the hypothetical question posed to the vocational expert did not include all his limitations. According to Davis, the hypothetical question the ALJ relied on to deny benefits was deficient because it didn't consider Davis limited to sedentary work. And when the vocational expert answered a question that limited Davis to sedentary work, she testified that there was no work Davis could perform.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *Crawford*, 363 F.3d at 1161.

As explained above, Davis has failed to establish that he cannot perform the range of light work that the ALJ found he can perform. So the ALJ did not have to ask the vocational expert to assume that Davis would be limited to sedentary work.

## IV.   Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on November 18, 2021.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE